UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONA S. MILLER,

    *Plaintiff*,

v.                                  CASE NO. 11-CV-13710

COMMISSIONER OF                DISTRICT JUDGE ARTHUR J. TARNOW
SOCIAL SECURITY,                  MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 11.)

Plaintiff was 40 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 32, 100, 107.) Plaintiff's employment history includes work as an

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

aesthetician for five years, a dancer for six years, a home-based skin care representative for seven months, and a new home sales agent for three years. (Tr. at 123.) Plaintiff filed the instant claims on January 15, 2010, alleging that she became unable to work on March 1, 2008. (Tr. at 100, 107.) The claims were denied at the initial administrative stages. (Tr. at 60, 61.) In denying Plaintiff's claims, the Commissioner considered affective disorders and substance addiction (alcohol) as possible bases for disability. (*Id.*) On March 10, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") Timothy C. Scallen, who considered the application for benefits *de novo*. (Tr. at 12-21; 32-59.) In an decision dated April 8, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 20-21.) Plaintiff requested a review of this decision on April 21, 2011. (Tr. at 7-8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when, on July 27, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On August 25, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.    Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by

2

substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference

from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had met the insured status requirements through December 31,

2013, and had not engaged in substantial gainful activity since March 1, 2008, the alleged onset date. (Tr. at 14.) At step two, the ALJ found that Plaintiff's myelopathic quadriparesis, migraine headaches, major depressive disorder, panic disorder, and borderline personality disorder were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 14-15.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work as an aesthetician, coat check attendant, dancer, internet salesperson, new home salesperson or home-based salesperson. (Tr. at 19.) The ALJ also found Plaintiff was a younger individual, age 18 to 49, on the alleged disability onset date. (*Id.*) At step five, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of light work. (Tr. at 16-19.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 20-21.)

      **E.**      **Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated with prescription medications and therapy for panic attacks at the New Oakland Child-Adolescent & Family Center from August 2008 through August 2009. (Tr. at 194-208.) Plaintiff was assessed GAF scores of 32 and 35. (Tr. at 196, 207.)

Plaintiff was also treated at Macomb County Community Mental Health from September 2009 through February 2010. (Tr. at 209-51.) Plaintiff was evaluated on September 30, 2009, by Sarath Hemachandra, M.D. (Tr. at 209-12.) Dr. Hemachandra diagnosed major depressive disorder, recurrent, severe without psychosis, panic disorder without agoraphobia, and borderline personality disorder. (Tr. at 212.) Dr. Hemachandra assessed a GAF score of 45. (*Id.*) Dr. Hemachandra noted that Plaintiff's thought processes were logical, she had no memory impairment, her intelligence was average, she was oriented in all areas, her judgment was generally good, and she was able to recognize her strengths and weaknesses. (Tr. at 211.) Dr. Hemachandra's impression was "[p]artial remission of Major depression/Panic anxiety [and] has borderline traits." (*Id.*) Dr. Hemachandra reviewed Plaintiff's medications and made adjustments on a regular basis. (Tr. at 213, 219, 232, 239, 245.)

On October 14, 2009, Dr. Hemachandra noted that there was "no evidence of poor grooming and hygiene, no blunted affect," and that Plaintiff's reported depressive mood and reported anxiety were "very mild" and "mild," respectively. (Tr. at 214-16.) In addition, there was no conceptual disorganization, suspiciousness, or unusual thought content noted. (Tr. at 216-17.) In November 2009, Plaintiff reported she was "less depressed, less anxious." (Tr. at 220.) The same findings as to hygiene and mental status were noted in November and December 2009 and January 2010. (Tr. at 221-23, 228-31, 235-37.) In February 2010, Plaintiff's depressive mood was noted to be "mild" and her anxiety "very mild," but all other mental status notations were the same as in the past. (Tr. at 247-48.)

A Psychiatric Review Technique completed by Kokila Sheth, M.D., on March 18, 2010, diagnosed affective disorders (depressive syndrome), anxiety-related disorders, and substance addiction disorders. (Tr. at 252, 255, 257, 260.) Plaintiff was found to have moderate limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. at 262.) Dr. Sheth also concluded that Plaintiff retained the mental RFC to perform low stress, simple, unskilled work on a sustained basis. (Tr. at 264.)

A Mental RFC Assessment also completed by Dr. Sheth on March 18, 2010, concluded that Plaintiff was moderately limited in her ability to understand and remember detailed instructions and the ability to maintain attention and concentration for extended periods, but was otherwise not significantly limited in understanding, memory, or sustained concentration and persistence, including the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 266-67.) The assessment also concluded that Plaintiff was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors and the ability to respond appropriately to changes in the work setting but was otherwise not significantly limited in social interaction or adaptation. (Tr. at 267.) The assessment added that Plaintiff was found to be partially credible because her activities of daily living are incompatible with the "inability to perform simple tasks or follow instructions" despite her

7

"emotional state and lack of concentration." (Tr. at 268.) Therefore, the assessment also concluded that Plaintiff would be able to perform low-stress, simple work on a sustained basis. (*Id.*)

Plaintiff also sought treatment with Michigan Neurology Associates, P.C., beginning in May 2010 for headaches and complaints of ongoing myelopathic quadriparesis. (Tr. at 270-79.) As of August 2010, Dr. Steven Beall, M.D., noted that Plaintiff's MRI showed a "few small lesions . . . of uncertain clinical significance" that Dr. Beall concluded were "strongly suggestive of multiple sclerosis . . . however, [he noted that] she lacks the time and space criteria for this disease." (Tr. at 271, 275.) Dr. Beall prescribed low-dose Inderal, Baclofen and Neurontin. (Tr. at 271.) On January 5, 2011, Dr. Beall found that Plaintiff's motor examination, gait, coordination and lab results were all normal. (Tr. at 270.) Dr. Beall concluded that Plaintiff had a "[c]linically isolated syndrome" because, although she had "ongoing quadriparesis for the last 6 months," the "[p]ossible and only cause so far is multiple sclerosis; however, she lacks time and space criteria for this disease." (Tr. at 270.) Dr. Beall counseled Plaintiff on stretching and massage. (*Id.*)

Plaintiff again sought treatment with Dr. Hemachandra at Macomb County Community Mental Health from July through December 2010. (Tr. at 280-320.) Dr. Hemachandra reviewed and adjusted Plaintiff's medications on a regular basis and recommended continued therapy. (Tr. at 281, 288, 307, 314.) In Plaintiff's person-centered plan it was noted that Plaintiff can independently make food choices, make weather-appropriate clothing choices, do housekeeping, prepare food, budget and shop, maintain home safety, avoid dangerous situations, travel, behave appropriately in the community, recognize health issues, administer medication, care for children, handle money and pay bills. (Tr. at 298-99.) In September 2010, Dr. Hemachandra noted "no evidence of poor grooming and hygiene, no blunted affect," and that her reported depressive mood and reported anxiety were "mild." (Tr. at 283-84.) In April and July 2010, Plaintiff's anxiety was reported to be "very mild" while the other criteria were the same as reported in September 2010. (Tr. at 310, 317.) In both July and September 2010, there was no conceptual disorganization, suspiciousness, or unusual thought content noted. (Tr. at 284-85.) In September 2010, "[m]ild hypomania" was also noted. (Tr. at 285.)

8

In her daily activity report, Plaintiff indicated that she provides transportation to and from school for her daughter, prepares meals for herself and her daughter, takes care of her daughter's needs, feeds and cares for her dog, does not have any difficulty with personal care other than she does not always bathe as often as she should, vacuums, does dishes, does laundry, goes outside at least twice a day, drives a car, shops in stores and online, handles her finances, reads, watches television, talks on the phone for 30 minutes once or twice a month, and can walk for one mile before needing to rest for 10 to 15 minutes. (Tr. at 159-64.)

Plaintiff testified at the administrative hearing that at her worst, she has had daily panic attacks that last for one to two hours and that they "just can happen randomly and then you put the fear on that of going out in public . . . [i]t's like a compounding effect." (Tr. at 38-39.) When Plaintiff has a panic attack, she indicated that she will "drive home immediately . . . . I'm under the covers. I'm in the shower. I'm – I try to stay as still as possible so I'll maybe sit on the couch with a blanket and just try not to move." (Tr. at 39.) Plaintiff testified that her most recent job was stressful because she "was getting up every day not knowing if I was going to have a job. It was constant criticism, constant humiliation[.]" (Tr. at 40.) When asked why her co-workers and boss were "on her so much[,]" Plaintiff responded "I'm really not sure." (Tr. at 40.)

When asked what symptoms prevent her from working, Plaintiff responded, "daily anxiety . . . [and] depression. My inability to be around people. I'm very sensitive to light and sounds. Just sitting in this waiting room, waiting to come in here was excruciating for me." (Tr. at 40-41.) When asked why it was excruciating, Plaintiff responded, "It's just too many people talking. The lights are bright. The noise. I can't really – it's hard to explain other than that." (Tr. at 41.) Plaintiff further testified that when she has migraines she "can't concentrate," "walk[s] around [her] house confused[,] . . . forget[s] what [she's] doing," and is "weak physically." (*Id.*) When asked how often she was experiencing the migraines, Plaintiff stated that she "was getting them quite often and now they've calmed to maybe once a week if I'm lucky." (Tr. at 41-42.) Plaintiff also expressed that she has "[e]xtreme fatigue" and "muscle weakness." (Tr. at 42.) Plaintiff testified that her doctor "wants me to take some pretty serious medication or do like a intravenous

9

steroid treatment. You know what. I'm scared of that . . . I feel like it's been hard for me to make that decision so I'm going to talk to him again about my options . . . . I certainly don't want to have a spinal tap so it's a very stressful decision to make." (Tr. at 43.)

Plaintiff testified that she drives and cooks but is more of a "snacker and a grazer." (Tr. at 46-47.) She makes meals for her daughter, does laundry, grocery shops, attends her church group meetings, and reads "[p]retty much anything . . . I like novels. I love history. I love, you know, learning about technology. I've been reading about astronomy." (Tr. at 47-48.) Plaintiff "occasionally" will "have a friend over or I'll go to a friend's house" or she will "have coffee with [her] neighbor sometimes." (Tr. at 48.) Plaintiff stated that "right now sitting like my back will start to ache," that she doesn't walk for "duration," and that she takes her "dog for walks sometimes and . . . can't even make it around like the whole area because it's so tiring." (Tr. at 50-51.) Plaintiff indicated that on bad days, she will sleep from, for example, 5:30 p.m. until 8:30 a.m. the next day. (Tr. at 51.) When asked how many bad days a week Plaintiff has, she responded, "Maybe one or two. The bad days come more in a cluster . . . [and] I just cannot get out of bed. It's very hard. And other days, you know, are not as bad as that." (Tr. at 51-52.)

The ALJ asked the Vocational Expert ("VE") to assume a person with Plaintiff's background who is

> capable to perform exertional commands at the light level. Also having frequent limitations of climbing stairs and ramps. No climbing of ropes, ladders and scaffolds[,] [f]requent balancing, stooping, kneeling, crouching and crawling. Also avoid concentrated exposure to excessive light and noise, vibrating tools as well as simple, routine, repetitive tasks. Low stress. Occasional interaction with the public.

(Tr. at 57.) The VE responded that such a person could not perform Plaintiff's past relevant work, but could perform the 10,000 jobs of housekeeping and office cleaning at the light level and the 20,000 jobs of simple assembly, packaging, sorting, and machine tending at the sedentary level that are available in the region. (Tr. at 56-57.) The ALJ further inquired whether such a person could maintain employment if she "required unscheduled breaks . . . [for] one to two hours anyway at a time," and the VE responded that she could not. (Tr. at 57-58.) When asked whether such a person could maintain employment if she had "marked limitations in concentration, pace and focus

10

due to all the various limitations as the claimant testified to as well as the depression and the daily anxiety and depression as well as the panic attacks," and the VE responded that she could not maintain employment. (Tr. at 58.)

### F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she retained the residual functional capacity to perform a limited range of light work. (Tr. at 16-19.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff argues that the ALJ did not properly assess her credibility, including her complaints of limitations from headaches. (Doc. 8 at 16-18.) Plaintiff further contends that the ALJ did not adequately assess Plaintiff's mental limitations as required by C.F.R. § 404.1520a because the ALJ improperly discounted GAF scores. (Doc. 8 at 18-21.) Finally, Plaintiff asserts

11

that the ALJ failed to pose a complete and accurate hypothetical to the VE, especially where the Psychiatric Review Technique included moderate difficulties in maintaining concentration, persistence and pace and the Mental Residual Functional Capacity assessment found moderate limitations in maintaining concentration for extended periods. (Doc. 8 at 23-26.)

### a.     Credibility Determination

When a disability determination that would be fully favorable to a claimant cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the claimant, considering the claimant's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011) (citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001)); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished). However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y*

*of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *Id.* Although a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded *solely* because they are not substantiated by objective medical evidence." S.S.R. 96-7p, at *1 (emphasis added). Instead, the ALJ must consider the following factors:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)   Any measures . . . used to relieve . . . pain.

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994); S.S.R. 96-7p, at *3. Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at *5.

After examining the record evidence, I suggest that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding her level of pain was not fully credible. The ALJ specifically considered all six factors listed above. (Tr. at 17-18.) As to treatment, Plaintiff was

13

never hospitalized for her depression or anxiety and instead received only modest treatment, such as therapy and prescription medication, which is inconsistent with a finding of disability. (Tr. at 139, 140-43, 202-04, 225.) *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007) (modest treatment regimen is inconsistent with a finding of total disability).

In addition, the opinions of Plaintiff's treating physicians support the ALJ's findings. Despite her impairments, Dr. Hemachandra noted that Plaintiff's thought processes were logical, she had no memory impairment, her intelligence was average, she was oriented in all areas, her judgment was generally good, and she was able to recognize her strengths and weaknesses. (Tr. at 211.) Dr. Hemachandra consistently noted "no evidence of poor grooming and hygiene, no blunted affect," that her reported depressive mood and reported anxiety were "very mild" or "mild," and that there was no conceptual disorganization, suspiciousness, or unusual thought content. (Tr. at 214-17, 228-31, 235-37, 283-84, 310, 317.) In Plaintiff's person-centered plan with Dr. Hemachandra, it was noted that Plaintiff could independently make food choices, make weather-appropriate clothing choices, do housekeeping, prepare food, budget and shop, maintain home safety, avoid dangerous situations, travel, behave appropriately in the community, recognize health issues, administer medication, care for children, handle money and pay bills. (Tr. at 298-99.)

Dr. Beall found that Plaintiff's motor examination, gait, coordination and lab results were all normal and he concluded that she had a "[c]linically isolated syndrome" because, although she had "ongoing quadriparesis for the last 6 months," the "[p]ossible and only cause" was multiple sclerosis, but she "lack[ed] time and space criteria for this disease." (Tr. at 270.) Even after an MRI showed a "few small lesions . . . of uncertain clinical significance" that Dr. Beall concluded were "strongly suggestive of multiple sclerosis," he nevertheless maintained that "she lack[ed] the time and space criteria for this disease." (Tr. at 271, 275.)

The RFC assessment provides further support for the ALJ's credibility findings where it concluded that Plaintiff was partially credible because her activities of daily living are incompatible with the "inability to perform simple tasks or follow instructions" despite her

14

"emotional state and lack of concentration." (Tr. at 268.) Therefore, the assessment also concluded Plaintiff would be able to perform low-stress, simple work on a sustained basis. (Tr. at 264, 268.)

Finally, Plaintiff's own description of her activities of daily living are incompatible with her subjective complaints of disabling symptoms. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Plaintiff indicated that she provides transportation to and from school for her daughter, prepares meals for herself and her daughter, takes care of her daughter's needs, feeds and cares for her dog, does not have any difficulty with personal care other than she does not always bathe as often as she should, vacuums, does dishes and laundry, goes outside at least twice a day, drives a car, shops in stores and online, handles her finances, reads, watches television, talks on the phone for 30 minutes once or twice a month, and can walk for one mile before needing to rest for 10 to 15 minutes. (Tr. at 159-64.) At the administrative hearing, Plaintiff confirmed that she is able to cook, make meals for her daughter, do laundry, grocery shop, attend her church group meetings, read, have friends over on occasion, and have coffee with her neighbor. (Tr. at 46-48.) I therefore suggest that the ALJ's credibility findings are supported by substantial evidence and should not be disturbed.

    **b.**    **GAF Scores**

Although Plaintiff contends that the ALJ improperly failed to give weight to Plaintiff's various GAF scores of 32, 35, and 45 (Tr. at 196, 207, 212), neither the Commissioner nor the Sixth Circuit requires that GAF scores, even consistent ones, be given any weight at all:

> [T]he Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" The GAF scores, therefore, are not raw medical data and do not necessarily indicate improved symptoms or mental functioning.

*Kennedy v. Astrue*, 247 Fed. App'x 761, 766 (6th Cir. 2007) (citations omitted) (finding that increase in GAF score from 55 to 60 was insignificant). Therefore, I suggest that the ALJ's decision not to rely on the GAF scores is of little consequence and does not undermine the ALJ's substantial evidence finding. *See also Oliver v. Comm'r of Soc. Sec.*, No. 09-2543, 2011 WL

15

924688, at *4 (6th Cir. Mar. 17, 2011) (upholding ALJ's decision not to rely on GAF score of 48 because it was inconsistent with other substantial evidence in the record and noting that the "GAF score is not particularly helpful by itself"); *Turcus v. Soc. Sec. Admin.*, 110 Fed. App'x 630, 632 (6th Cir. 2004) (upholding ALJ's reliance on doctor's opinion that plaintiff could perform simple and routine work despite GAF score of 35).

    **c.    RFC Findings and Hypothetical**

The ALJ concluded that Plaintiff could perform light work, except that she was limited to frequent climbing of stairs and ramps and should avoid all climbing of ropes, ladders, and scaffolds, limited to no more than frequent balancing, stooping, kneeling, crouching, and crawling, should avoid concentrated exposure to excessive light, noise, and vibrating tools, and is limited to unskilled work that is low stress, involves simple, routine, repetitive tasks, and only occasional interaction with the public. (Tr. at 16-18.)

With regard to Plaintiff's contention that the ALJ's RFC finding that she was able to perform unskilled work failed to account for her moderate limitations in concentration, persistence and pace, this argument is "not uncommon and the case law resolves it both ways." *Hernandez v. Comm'r of Soc. Sec.*, No. 10-cv-14364, 2011 WL 4407225, at *9 (E.D. Mich. Aug. 30, 2011) (collecting cases). The *Hernandez* court stated that

> a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace . . . . However, the Court also finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of, for example, "unskilled work" but excludes a moderate limitation in concentration. Rather this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's hypothetical and RFC assessment.

*Id.* at *10 (citations omitted).

In the instant case, Plaintiff relies on the Psychiatric Review Technique which found moderate limitations in activities of daily living, maintaining social functioning, and in maintaining concentration, persistence and pace. (Doc. 8 at 23; Tr. at 262.) However, in the same report, Dr. Sheth also concluded that Plaintiff retained the mental RFC to perform low stress, simple, unskilled work on a sustained basis. (Tr. at 264.) In addition, Dr. Sheth also completed the

16

RFC assessment in which he concluded that Plaintiff was not significantly limited in understanding, memory, or sustained concentration and persistence, including the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 266-67.) Dr. Sheth also concluded in this assessment that Plaintiff would be able to perform low- stress, simple work on a sustained basis. (Tr. at 268.) I further note that there are no medical opinions to the contrary and that the opinions of Plaintiff's treating physicians support the RFC findings as they support the ALJ's credibility determination as discussed above.

I therefore suggest that the record as a whole provides substantial evidence supporting the ALJ's hypothetical and the RFC assessment limiting Plaintiff to unskilled work. (Tr. at 16-18.) *See Infantado v. Astrue*, 263 Fed. App'x 469, 477 (6th Cir. 2008) (substantial evidence supported ALJ's decision where, although the psychiatrist found "moderate" limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the psychiatrist noted the plaintiff's daily activities and concluded that the plaintiff was capable of performing simple tasks on a sustained basis); *Cummings v. Comm'r of Soc. Sec.*, No. 10-11621, 2011 WL 3958473 (E.D. Mich. Sept. 8, 2011) (ALJ's omission of concentration and pace limitations in the hypothetical was reasonable where doctor who concluded the plaintiff had "serious concentration and attention difficulties" also found his "ability to work may not be severely impaired as long as the job does not involve any appreciable amount of contact with people"); *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sep. 30, 2010) ("Plaintiff's objection ignores a particularly compelling piece of evidence[:] . . . the psychologist diagnosed moderate mental impairments but also concluded that Plaintiff's mental limitations would not prohibit him from performing simple, unskilled work"). I therefore suggest that the ALJ's decision is supported by substantial evidence on this ground and should not be disturbed.

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice

within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ Charles E Binder
CHARLES E. BINDER
Dated: May 7, 2012                          United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  May 7, 2012                    By     s/Patricia T. Morris
                                              Law Clerk to Magistrate Judge Binder